IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY TERRY DAN,<br><br>              Plaintiff,<br><br>      vs.<br><br>DOUGLAS COUNTY, FOSTER, K. A. GAMBLE, Officer; C. L. GODWIN, Officer; KITCHEN STAFF, ADMINISTRATION STAFF, INMATE ACCOUNT STAFF, ESTEVEZ, RAIMEZ, S. M. ROSE, DONNA FRICKE, MEDICAL STAFF, DR. ESH, COMMISSARY STAFF, BLUM, GRAHAM, VALQUIR, Lieutenant; CUMMINGS, Sergeant; CASE MANAGEMENT, BARBIE, Sergeant; N. A. JORDAN, LISA, badge number #1589; MAINTENANCE STAFF, M. K. MCLELEAN, Sergeant; and HADDAD, Officer;<br><br>              Defendants. | **8:18CV31**<br><br><br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, a pro se litigant currently incarcerated at the Douglas County Correctional Center (DCCC), filed this 42 U.S.C. § 1983 action in which he complains about a myriad of issues related to his conditions of confinement and his treatment by jail staff. He has been given leave to proceed in forma pauperis. (Filing No. 8.) The court now conducts an initial review of Plaintiff's Complaint[1]

---

[1] For purposes of this initial review, the Complaint includes all the supplemental documents filed by Plaintiff (filing nos. 1-1 through 1-13; filing nos. 11 through 20) and Plaintiff's Motion to Amend Grievances (filing no. 10). Plaintiff's Motion to Amend Grievances (filing no. 10) is thus granted to the extent that the court will consider the documents attached to the motion as supplemental to the Complaint. *See* **Error! Main Document Only.**Fed. R. Civ. P. 10(c) (**Error! Main Document Only.**"A copy of any written instrument which is an exhibit to a

to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff brings this § 1983 action against the following Defendants: Douglas County; Officers Foster, K.A. Gamble, C.L. Godwin,[2] Estevez, Raimez, S.M. Rose, Donna Fricke, Blum, Graham, N.A. Jordan, Lisa (Badge #1589), and Haddad; Lieutenant Valquir; Sergeant Cummings; Sergeant Barbie; Sergeant M.K. Mclelean; Dr. Esh; and unnamed DCCC Kitchen Staff, Administration Staff, Inmate Account Staff, Medical Staff, Commissary Staff, Case Management Staff, and Maintenance Staff. Liberally construed, Plaintiff also sues Mod #20 Staff, Record Staff, Officer M. P. Rowe, Mr. Formanek, and the director of DCCC.[3] (Filing No. 1 at CM/ECF p. 5; Filing No. 10 at CM/ECF pp. 7–10.) Plaintiff broadly alleges violations of his constitutional rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments and refers the court to the numerous supplemental documents submitted with his Complaint as forming the basis of his claims.

The supplemental documents submitted by Plaintiff consist of copies of grievances filed by Plaintiff with DCCC, the responses to those grievances, as well as several of Plaintiff's narrative accounts of incidents that have transpired during his incarceration. The specific allegations will be discussed below in the

---

pleading is a part thereof for all purposes."); NECivR 15.1(b) (court may consider pro se litigants' amended pleadings as supplemental to original pleading).

[2] Officer C.L. Godwin is also referred to as Officer "Goodwin" within the Complaint documents. The court will use the name "Godwin" throughout this Memorandum and Order.

[3] See Miller v. Hedrick, 140 Fed. App'x 640, 641 (8th Cir. 2005) (citing Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.")).

"Discussion of Claims," but generally, the complaints evidenced by Plaintiff's documents can be broken down into the following categories:

- Harassment, poor treatment, and retaliation by DCCC jail staff (*see* filing no. 1-1; filing no. 1-7; filing no. 1-8; filing no. 1-9; filing no. 1-11; filing no. 1-12; filing no. 16; filing no. 17; filing no. 19; filing no. 20);
- Inadequate and contaminated food (*see* filing no. 1-4; filing no. 1-8; filing no. 1-11; filing no. 13; filing no. 14; filing no. 18);
- Unsanitary cell conditions (*see* filing no. 1-4; filing no. 1-6);
- Inadequate or improper medical care (*see* filing no. 1-3; filing no. 1-6; filing no. 1-13; filing no. 10; filing no. 11; filing no. 13);
- Assaults by officers and inmates (*see* filing no. 1-12; filing no. 10; filing no. 11); and
- Inadequate responses to and investigation of Plaintiff's grievances and denial of access to the grievance procedure (*see* filing no. 1-1; filing no. 1-2; filing no. 1-3; filing no. 1-5; filing no. 1-6; filing no. 1-7; filing no. 1-8; filing no. 1-9; filing no. 1-10; filing no. 1-11; filing no. 1-12; filing no. 10; filing no. 10-1; filing no. 12; filing no. 15; filing no. 16; filing no. 17).

As relief for the ill treatment as well as the physical harm Plaintiff has suffered from being fed "out of nasty food trays and mixing [his] food with germs and disease," Plaintiff seeks $3,900,000.00 in damages. (Filing No. 1 at CM/ECF p. 8.)

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim

upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

### A. Official Capacity Claims

Plaintiff has sued Douglas County and multiple officers and employees of DCCC (hereinafter "DCCC Defendants"). Because Plaintiff does not specify in what capacity the DCCC Defendants are being sued, the court must assume they are sued in their official capacities. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) ("'This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.'") (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)). Liberally construed, Plaintiff's claims against the DCCC Defendants are claims against Douglas County. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson, supra*. To state a plausible claim against Douglas County, Plaintiff must allege that a "policy" or "custom" caused a violation of his constitutional rights.

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege that there is a continuing, widespread, persistent pattern of unconstitutional misconduct by Douglas County's employees, or that Douglas County's policymaking officials were deliberately indifferent to or tacitly authorized any unconstitutional conduct. In addition, Plaintiff does not allege that an unconstitutional custom was the moving force behind the alleged constitutional violations. In other words, Plaintiff has failed to allege facts suggesting that a Douglas County "policy" or "custom" caused a violation of his constitutional rights. Accordingly, Plaintiff has failed to allege a cognizable claim against Douglas County and the DCCC Defendants in their official capacities.

While all of Plaintiff's claims must be dismissed against Defendants in their official capacities, the court will examine Plaintiff's constitutional claims to determine whether Plaintiff should be given an opportunity to amend his Complaint to allege plausible claims for relief against the DCCC Defendants in their individual capacities.

**B. Due Process Claims**

Plaintiff generally asserts that the DCCC grievance procedure violated his due process rights. (*See* Filing No. 1 at CM/ECF p. 7.) Liberally construed, Plaintiff specifically alleges the following due process violations:

- Case Management Staff and Administration Staff fail to follow the grievance procedure by failing to respond to Plaintiff's grievances within fifteen days as required.
- Officer Donna Fricke incorrectly used Plaintiff's inmate data number as the control number for one of his grievance forms, and Lieutenant Dan Scherer later improperly changed the control number and voided Plaintiff's grievance.
- Officer M.P. Rowe, Officer N.A. Jordan, Sergeant Barbie, Officer Donna Fricke, Officer Godwin, Officer S.M. Rose, Officer Raimez, Case Management Staff, and Administration Staff failed to provide Plaintiff with his requested grievance forms.
- DCCC Administration Staff and Medical Staff failed to adequately investigate Plaintiff's grievances.
- Commissary Staff failed to adequately respond to Plaintiff's grievance regarding his difficulties in placing commissary orders over the phone.
- Inmate Account Staff failed to provide Plaintiff with a certified copy of his trust account statement in response to his grievance.
- Officer Lisa (Badge #1589) refused to notarize Plaintiff's inmate account record as he requested.
- Law Library Staff Ostwald (Badge #8532) gave Plaintiff false addresses and phone numbers for attorneys upon Plaintiff's request for the attorneys' contact information.[4]

_____

[4] Plaintiff alleges Ostwald's conduct violated his due process rights. (Filing No. 16 at CM/ECF p.3.) However, to the extent that Plaintiff is alleging Ostwald interfered with his access

- Douglas County Jail Staff refuse to allow Plaintiff to continue with the grievance procedure and Plaintiff cannot continue with the grievance procedure after a Step 2 grievance.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Plaintiff's allegations regarding the mishandling of and inadequate responses to his inmate grievances fail to state a claim for relief under § 1983. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances). The documents submitted by Plaintiff clearly demonstrate that Plaintiff has received responses to his grievances,[5] and Plaintiff's

---

to the courts, the court finds the factual allegations insufficient to state a plausible claim for relief. *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) ("[A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." (internal quotation marks omitted)).

[5] Indeed, Plaintiff's documents indicate that "[i]n December 2017 [Plaintiff] filed and received a response back to fifty-eight (58) grievances, in January 2018 [he] filed and received responses back to forty-nine (49) grievances and in February 2018 [he] filed 26 grievances" as of February 20, 2018. (Filing No. 10-1 at CM/ECF p. 6.)

mere dissatisfaction with the DCCC Defendants' responses to or consideration of his grievances does not implicate the deprivation of any constitutional right. To the extent Plaintiff alleges that he cannot continue with the grievance procedure,[6] he has failed to state a § 1983 claim as even the lack of a meaningful grievance procedure does not provide a cause of action under § 1983. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 750 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure). Thus, even if Plaintiff had alleged his due process claims against specific DCCC Defendants in their individual capacities, the facts alleged in the Complaint are insufficient to state any due process violation.

## C. Eighth Amendment Claims

Plaintiff's Complaint and the supplements thereto contain a multitude of allegations that may be characterized as Eighth Amendment claims. Interpreted liberally, Plaintiff claims his Eighth Amendment rights have been violated because:

- He was moved into a dirty cell and made to drink toilet water.
- He is provided inadequate and contaminated food.
- He is subjected to harassment and ill treatment from DCCC jail staff.
- He was assaulted by his cellmate after DCCC jail staff ignored his urgent inmate request forms.
- He was assaulted by an inmate, Officer Estevez, and Officer C.L. Godwin on December 8, 2017.
- He was assaulted by Officer Blum and Officer Haddad on January 23, 2018.
- He is denied adequate medical care.

---

[6] Plaintiff does not allege that he has been denied complete access to the grievance procedure, but rather he appears to merely complain that he cannot file grievances beyond the Step Two grievance. (*See* Filing No. 1-10 at CM/ECF pp. 1–3.)

Each of these claims will be addressed.

### *1. Cell Conditions*

Plaintiff alleges that on October 22, 2017, Sergeant Cummings moved Plaintiff from Housing Unit 14 to Housing Unit 11 into a cell that was covered in blood and feces. ([Filing No. 1-4 at CM/ECF pp. 3–6](#).) Subsequently, on October 31, 2017, Plaintiff claims Maintenance Staff were in his cell "hooking up [his] toilet water to [his] sink water" so that he "was drinking [his] toilet water [through his] sink." ([Filing No. 1-6 at CM/ECF pp. 5–7](#).) In response to Plaintiff's grievances about his cell's conditions, DCCC staff responded that "staff have been informed that cells must be clean before new inmates are moved in" and denied that maintenance hooked up Plaintiff's toilet to his sink explaining that "[t]he water line to the toilet cannot be hooked up to the sink [as] the supply lines are different sizes and maintenance did not change this." ([Filing No. 1-4 at CM/ECF p. 5](#); [Filing No. 1-6 at CM/ECF p. 5](#).)

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (internal citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail or prison officials must provide reasonably adequate sanitation, bedding, hygienic materials, food, and utilities. Prison condition claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted). "In evaluating unsanitary conditions of

confinement, the courts should focus their inquiry on the degree to which the conditions are unsanitary and the length of the exposure to those conditions." *Vann v. Hobbs*, No. 5:11-CV-00146-JMM, 2012 WL 3860523, at *3 (E.D. Ark. Aug. 2, 2012), report and recommendation adopted, No. 5:11-CV-00146-JMM, 2012 WL 3860542 (E.D. Ark. Aug. 22, 2012).

As it stands, Plaintiff's factual allegations are insufficient to state a violation of the Eighth Amendment. First, the documents submitted in support of his Complaint completely undermine the factual basis for his claim of being forced to drink toilet water, and the court concludes such claim is frivolous. With respect to the dirty cell, Plaintiff does not allege how long he was subjected to the dirty conditions. However, because courts should be "especially cautious about condoning conditions that include an inmate's proximity to human waste," *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir.1990), the court will grant Plaintiff leave to amend his claim of unsanitary cell conditions to state a plausible claim for relief against Sergeant Cummings in his individual capacity.

### 2. Inadequate and Contaminated Food

Plaintiff's documents filed in support of his Complaint include several grievances and allegations about the DCCC Kitchen Staff serving inadequate and contaminated food. Plaintiff complains generally about the quality of the food alleging that he often receives "cold nasty food," (filing no. 14; filing no. 18), that on one occasion, Lieutenant Valquir denied Plaintiff a hot meal and he received only cold sack meals, (filing no. 1-4 at CM/ECF p.1), and that he is being provided small, inadequate portions and Kitchen Staff are starving him (filing no. 18). Additionally, Plaintiff claims that Kitchen Staff is poisoning his food and that, on one occasion, Officer Godwin and Officer Estevez tampered with or allowed other inmates to tamper with Plaintiff's dinner tray. (Filing No. 1-11.) In response to Plaintiff's grievances about food contamination and tampering, DCCC officials

investigated and concluded Plaintiff's allegations were unfounded. When Plaintiff complained that Medical Staff denied his request for a blood test to see if Plaintiff got an infection or disease from the allegedly poisoned food, DCCC officials told Plaintiff that if he is having specific medical issues, then he should write a request to medical and describe specific symptoms. (Filing No. 13 at CM/ECF p.3.)

Prison officials are required to provide a nutritionally adequate diet, and food that is not contaminated. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Divers v. Department of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990). Here, Plaintiff's complaints about the general quality of the food or receiving only cold sack meals does not rise to the level of an Eighth Amendment violation. Moreover, Plaintiff's claims that his food is being poisoned are completely unsupported by sufficient factual allegations. Plaintiff does not allege facts suggesting that his health has suffered in any way due to the allegedly poisoned food, and his bare, unsupported conclusory allegations that the food is poisoned, despite DCCC officials' response to him that such allegations are unfounded based on their investigation, are insufficient to state a plausible Eighth Amendment claim. *See Wishon, supra* ("Wishon has presented no evidence that the food he was served was . . . prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food."). However, to the extent Plaintiff alleges that he is receiving nutritionally inadequate portions of food, the court will give Plaintiff an opportunity to amend to state a plausible Eighth Amendment claim against individual defendants responsible for such conduct.

### 3. Harassment and Ill Treatment by DCCC Staff

Plaintiff asserts that he has been subjected to wrongful and inhumane treatment by DCCC jail staff. Liberally construed, the alleged wrongful treatment includes the following acts:

a) On October 25, 2017, Officer Ryan Foster announced over the loud speaker that Plaintiff's "mama suck dick and Obama suck dick or was that you [Plaintiff] sucking dick. That [sic] what we keep hearing, dick in the hand Dan." (Filing No. 1-1 at CM/ECF p. 2.)

b) On October 29, 2017, Officers Blum and Graham allowed inmates to throw urine and coffee under Plaintiff's door.

c) Officer M.P. Rowe laughed along with other inmates who were messing with Plaintiff.

d) On November 14, 2017, Officer Estevez threw a cup of tea through Plaintiff's door as he and Officer C.L. Godwin delivered meal trays, and both officers laughed about it.

e) On November 14, 2017, Officers Ryan Foster and K.A. Gamble allowed another inmate to draw a picture of a penis and testicles on Plaintiff's cell window with a bar of soap.

f) On November 1, 2017, Officer Raimez told Plaintiff that DCCC jail staff threw away Plaintiff's legal mail, a Step One grievance form and reply, and copies of all the property Plaintiff entered DCCC with, when he was moved to a different housing unit.[7]

g) On December 3, 2017, after Plaintiff said he was going to file a grievance against Officer Godwin, Officer Godwin called Plaintiff a "snitch" loudly enough for the whole housing unit to hear, and Plaintiff was later attacked on December 8, 2017, by another inmate as a result. (Filing No. 1-12 at CM/ECF pp. 1–2.)

---

[7] To the extent Plaintiff may be alleging a due process violation based on the destruction of his property, he has failed to allege sufficient facts to support a plausible due process claim as there are no facts to suggest that the destruction was intentional. *See Cummings v. McCarter*, 826 F. Supp. 299, 301 (E.D. Mo. 1993) ("The negligent loss or destruction of property does not implicate the Fourteenth Amendment's due process protection.") Additionally, the facts alleged do not establish a violation of Plaintiff's right to access the courts as no injury or prejudice is alleged. *See id.* (inmate entitled to no relief based on destruction of his "legal papers" where inmate failed to show harm resulting from their loss or destruction).

h) On May 24, 2018, Plaintiff got into a verbal altercation with another inmate who stated that Officer Graham told the inmate that Plaintiff gets beat up a lot.

i) On March 7, 2018, an inmate named Lotts told Plaintiff that Officer Foster wanted Lotts to "kick [Plaintiff's] ass so he can be place[d] back into general population."

With respect to the majority of Plaintiff's allegations of general harassment, the court concludes that Plaintiff has failed to allege a violation of his constitutional rights. Verbal abuse and name calling by a prison guard are not usually actionable under section 1983. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)); *see also Franks v. Fridley*, No. 13-0561-WS-N, 2014 WL 3540574, at *5 (S.D. Al. July 17, 2014) ("Inappropriate, derogatory, demeaning, profane, threatening or abusive comments made by a correctional official to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation.") (collecting cases). Moreover, most of the alleged acts of abuse or harassment cannot be said to constitute conduct "so inhumane, base or barbaric so as to shock the sensibilities." *See Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Accordingly, the court finds that Plaintiff has failed to state plausible claims for relief with respect to the incidents described above in subparagraphs a) through f).

Liberally construed, Plaintiff's allegations regarding Officer Godwin calling Plaintiff a "snitch," Officer Graham telling another inmate that Plaintiff gets beat up a lot, and Officer Foster telling inmate Lotts to "kick [Plaintiff's] ass" raise Eighth Amendment issues of deliberate disregard for Plaintiff's safety. "Various courts have held that prison officials who identify an inmate as a snitch to other inmates, with intent to provoke an assault or the fear of assault, may be held liable for an Eighth Amendment violation." *White v. Trayser*, No. CIV.A. 10-11397, 2011 WL 1135635, at *6 (E.D. Mich. Jan. 4, 2011), report and recommendation

adopted, No. 10-CV-11397, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (collecting cases); *see also Reeves v. King*, 774 F.3d 430, 432 (8th Cir. 2014) (acknowledging that a correctional officer violates his duty to protect an inmate from harm and unreasonably subjects an inmate to a substantial risk of harm when he labels the inmate a snitch to other inmates); *Hobbs v. Evans*, 924 F.2d 774, 775 (8th Cir.1991) (liability established for assaults on inmate because of guard's labeling inmate as an informant). Accordingly, the court will grant Plaintiff leave to amend his Complaint to allege claims against Officer Godwin, Officer Graham, and Officer Foster in their individual capacities with respect to the allegations described above in subparagraphs g), h), and i).

### 4. Assault by Cellmate

Plaintiff alleges that he filled out "two urgent inmate request forms" to DCCC jail staff on June 29, 2018, which staff ignored. As a result, Plaintiff alleges he and his cellmate, Andrew D. Combs, got into a fight in their cell. Plaintiff claims several gang members in the same housing unit as Plaintiff had been threatening and sexually assaulting Combs and told Combs to fight Plaintiff.

Liberally construed, Plaintiff appears to allege that DCCC jail staff failed to protect him from the attack by Combs because staff ignored Plaintiff's urgent request forms. The Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, not "'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Id.* (quoting *Farmer, supra*). Rather, "[t]he duty to protect requires only that prison officials take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." *Id.* (internal quotation marks omitted). Therefore, a constitutional violation exists only if two factors are established: (1) "an

objectively serious deprivation," and (2) "a subjectively culpable state of mind" on the part of prison officials. *Id.*

Here, the facts alleged are insufficient to state an Eighth Amendment failure-to-protect claim. First, Plaintiff does not allege what information his urgent inmate request forms contained, whether the requests alerted staff to any impending assault by his cellmate, or to whom, if anyone, the requests were delivered. As presented, Plaintiff has failed to allege facts from which an inference could be made that DCCC staff knew of, and responded unreasonably to, a substantial risk of serious harm from another inmate. The court, however, will grant Plaintiff leave to amend to state a plausible failure-to-protect claim against specific individual DCCC staff members.

### 5. Assault by Inmate, Officer Estevez, and Officer Godwin

Plaintiff claims he was assaulted by an inmate named Hines, Officer Estevez, and Officer C.L. Godwin on December 8, 2017. Plaintiff asserts the officers were assaulting him while they placed him in restraints. Plaintiff alleges Officer Estevez placed his knee on Plaintiff's face and head while Plaintiff's nose was bleeding and punched Plaintiff in the head with his fist. Plaintiff further alleges that, while being placed back in his cell in full restraints, Officer Estevez slammed Plaintiff to the floor and made threats of "fuckin' [him] up in [his] cell." (Filing No. 1-12 at CM/ECF p. 3.) In response to Plaintiff's grievance regarding the assault, DCCC officials told Plaintiff that "[v]ideo indicates that you were involved in an altercation with an inmate Hines and staff acted and responded appropriately. At no time did staff assault you." (*Id.* at CM/ECF p. 4.)

The Eighth Amendment forbids the wanton and unnecessary infliction of pain upon prisoners. In an Eighth Amendment excessive-force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

The information presented in Plaintiff's Complaint indicates only that Plaintiff was involved in an altercation with another inmate and Officer Estevez and Officer Godwin were also involved. The court cannot draw any inferences from the facts alleged as to whether the force utilized by the officers was necessary to respond to the altercation between inmate Hines and Plaintiff or whether the force was applied maliciously to cause harm to Plaintiff. As such, the allegations fail to state a claim for relief under the Eighth Amendment, but the court will give Plaintiff an opportunity to amend to state a plausible claim for relief against Officer Estevez and Officer Godwin in their individual capacities.

### 6. Assault by Officer Blum and Officer Haddad

Plaintiff alleges that on January 23, 2018, Officer Blum and Officer Haddad unlocked his cell door, entered, and assaulted Plaintiff for no reason. Plaintiff states Officer Blum sprayed him with pepper spray in both eyes and then both Officer Blum and Officer Haddad kicked and punched Plaintiff in the face. As a result of the assault, Plaintiff experienced pain and swelling in the right side of his face, in his upper right chest area and rib cage, and in his lower hip area. (Filing No. 10-1 at CM/ECF p. 1.) In response to Plaintiff's grievance regarding the assault, DCCC officials determined that Plaintiff's grievance had merit and deemed it "a personnel matter which we take very seriously [and] [a]ction has been taken." (Filing No. 10 at CM/ECF p. 6.)

Based on these allegations, the court will grant Plaintiff leave to amend to allege an Eighth Amendment excessive force claim against Officer Blum and Officer Haddad in their individual capacities.

### 7. Inadequate Medical Care

Construed liberally, Plaintiff claims he has been denied medical treatment or provided inadequate medical treatment because:

- Dr. Esh failed to treat his complaints of chronic neck, back, and chest pain, and Medical Staff denied Plaintiff medications for these chronic pains.
- Medical Staff refused to give Plaintiff his inhaler/breathing treatments for eleven days.
- Medical Staff failed to properly treat Plaintiff's medical issues after he was assaulted by inmate Hines.
- Medical Staff member, Mr. Formanek, did not treat Plaintiff after he was assaulted by Officers Blum and Haddad, and Mr. Formanek submitted false documents about treating Plaintiff.
- Medical Staff refused to give Plaintiff blood tests he requested to see if he had been drinking toilet water and if he had caught an infection or disease from eating contaminated food from the kitchen.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). An objectively serious medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would

easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). Deliberate disregard requires "more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal citations and quotation marks omitted). Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegations regarding the allegedly improper care he received from Dr. Esh for his chronic pain and from Medical Staff after he was assaulted by inmate Hines are insufficient to state an Eighth Amendment Claim. Plaintiff's mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008).

Likewise, Plaintiff's complaints that Medical Staff denied him medications for his chronic pain and breathing treatments for eleven days do not state an Eighth Amendment violation. Plaintiff has alleged no facts showing that the denial of chronic pain medications or lapse in breathing treatments constitute an objectively serious medical need and bare assertions or a "self-diagnosis," without more, are not enough to sustain an Eighth Amendment claim. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Moreover, the documents associated with these claims demonstrate that Medical Staff assessed Plaintiff's condition and acted in accordance with their assessment yet remained willing to re-assess Plaintiff at his request. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

With respect to Plaintiff's allegation that Medical Staff member, Mr. Formanek, lied about treating him on January 23, 2018, the facts alleged fail to suggest that Mr. Formanek deliberately disregarded Plaintiff's objectively serious medical need. Assuming Mr. Formanek did not treat Plaintiff after the assault and falsely documented that he did, Plaintiff alleges only that he did not receive an "ice pack" and "pain pills" for the pain and swelling to his face, chest, and hip. (Filing No. 10-1 at CM/ECF p. 1.) The documents submitted in support of this claim also show that Plaintiff did not ask to be seen by medical after the assault or that he requested any type of treatment. Thus, Plaintiff has not stated an Eighth Amendment claim against Mr. Formanek.

Lastly, Plaintiff's allegations that Medical Staff refused to give him the blood tests he requested do not state a cognizable Eighth Amendment claim. Plaintiff does not allege that he requested the blood tests due to any specific medical symptoms he was experiencing related to his drinking water or food. As such, DCCC Medical Staff were not deliberately indifferent to Plaintiff's medical needs when they refused to test his blood. *See Long, supra*.

## D. Retaliation Claims

Finally, Plaintiff's Complaint asserts claims of retaliation. Liberally construed, Plaintiff alleges the following adverse actions are in retaliation for his filing of grievances:

- Mod #20 Staff refuse to give Plaintiff toilet paper and his "rec."[8] (Filing No. 1-7 at CM/ECF p. 5; Filing No. 1-11 at CM/ECF p. 1.)

---

[8] To the extent Plaintiff is alleging that he was denied toilet paper and recreation time in violation of the Eighth Amendment, the Complaint's allegations are insufficient to state such a claim as there is no indication that Plaintiff was denied "the minimal civilized measure of life's

- Kitchen Staff tamper with and poison his food.
- Administration Staff refuse to investigate their jail staff for the wrongdoing done to Plaintiff.
- Mod #20 Staff and Officer C.L. Godwin make false announcements to the entire housing unit that Plaintiff is a "child molester" and "snitch." (Filing No. 1-11 at CM/ECF p. 2.; Filing No. 1-12 at CM/ECF p. 1.)
- Officer Estevez and Officer C.L. Godwin assaulted Plaintiff on December 8, 2017.

To state a viable retaliation claim, a prisoner must allege facts demonstrating that: (1) he engaged in protected activity; (2) the defendants responded with an adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected action. *L.L. Nelson Enterprise Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807–08 (8th Cir. 2012) (internal quotation marks omitted). Further, "[t]o prevail in an action for First Amendment retaliation, 'plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury.'" *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir.2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).

Filing a prison grievance is a protected First Amendment activity. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). Therefore, based on the foregoing analysis, the court will grant Plaintiff leave to amend his Complaint to state plausible retaliation claims against Officer C.L. Godwin for labeling Plaintiff a "snitch," Officer Estevez and Officer C.L. Godwin for the alleged assault, and specific individual Kitchen Staff members to the extent Plaintiff has alleged they are providing nutritionally inadequate food.

---

necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

# IV. CONCLUSION

As currently drafted, Plaintiff's Complaint fails to state a claim for relief against any of the Defendants in their official capacities as Plaintiff has failed to allege facts suggesting that a Douglas County "policy" or "custom" caused a violation of his constitutional rights. However, Plaintiff may elect to amend his Complaint to assert the following claims against specific Defendants in their individual capacities:

- Unsanitary cell conditions against Sergeant Cummings;
- Nutritionally inadequate food portions;
- Eighth Amendment claims against Officer C.L. Godwin, Officer Graham, and Officer Foster for their comments about Plaintiff to other inmates that resulted in assaults by or altercations with other inmates;
- Failure-to-protect claim based on Plaintiff's assault by his cellmate;
- Excessive force claims against Officer Estevez and Officer C.L. Godwin;
- Excessive force claims against Officer Blum and Officer Haddad; and
- Retaliation claims against Officer C.L. Godwin, Officer Estevez, and specific individual Kitchen Staff members.

If Plaintiff chooses to amend his Complaint, he is advised that **the court will no longer permit the piecemeal filing of supplemental materials in this case**. Plaintiff's repeated filing of supplementary materials frustrated the court's ability to discern and review the claims Plaintiff seeks to raise in this matter. It is true that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers; however, even pro se litigants must comply with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A complaint must state

22

enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Attaching hundreds of pages worth of grievance forms to a form Complaint without any supporting factual context does not meet this pleading standard.

On the court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently describes his claims against Defendants in their individual capacities only. The amended complaint must identify each defendant by name and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, how the defendant's actions harmed him, and what specific legal right Plaintiff believes the defendant violated. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the clerk of the court will provide to him.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his claims against Defendants will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's Motion to Amend Grievances (filing no. 10) is granted to the extent that the court will consider the documents attached to the motion as supplemental to the Complaint.

2.     Plaintiff has until **August 27, 2018**, to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. If Plaintiff chooses to file an amended complaint, the court will conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) and 1915A in the normal course of business.

2.     The clerk of the court is directed to set a pro se case management deadline using the following text: **August 27, 2018**: check for amended complaint.

3.     The clerk of the court is directed to send to Plaintiff a blank civil complaint form.

Dated this 27th day of July, 2018.

<div style="margin-left:40%">

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

</div>